UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

KEVIN M. HOLMES,  CIVIL NO. 08-06133 (PJS/JSM)

  Plaintiff,

v.  REPORT AND RECOMMENDATION

MINNEAPOLIS DEPARTMENT
OF CIVIL RIGHTS.

  Defendant.

The above matter came on before the undersigned on Defendant's Motion for Summary Judgment [Docket No. 16]. Plaintiff appeared pro se and Franklin Reed, Esq. appeared on behalf of the City of Minneapolis. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(A), (B) and Local Rule 72.1(c).

**I.    FACTUAL BACKGROUND**

Plaintiff Kevin M. Holmes ("Holmes") was employed with AT&T from May 9, 1999, to May 3, 2003. See Memorandum in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."), Exhibit A (Plaintiffs' Amended Charge of Discrimination). AT&T terminated Holmes's employment on May 3, 2003, due to his failure to submit the appropriate paperwork authorizing his time off from work. Id. Holmes filed a charge with the Minneapolis Department of Civil Rights ("MDCR") at the end of June 2003 and an Amended Charge on November 7, 2003. Id. In his charge, Holmes alleged violations of Minneapolis Code of Ordinances, Chapter 139.40(b)(2)(3)(4) and Americans with Disabilities Act of 1990 ("ADA"), claiming that

AT&T had subjected him to disparate treatment, harassment, unfair discipline and termination due to his disabilities of depression and migraine headaches. Id. On November 7, 2003, Holmes signed an acknowledgement representing that he had read and understood the MDCR's Statement of Authority Form, which provided in relevant part:

> Any legal action you take beyond the discrimination complaint you have filed with the Department must be taken by you and you should be aware that statutory time limits exists for all such claims. The filing and investigation of your complaint by the Department of Civil Rights ***does not*** stop the running of these time limits. You are advised to seek the advice of legal counsel with regard to any action beyond that you have begun with the Department.

Def.'s Mem., Exhibit B (emphasis in original).

Holmes's Charge of Discrimination was investigated by the Complaints Investigative Unit ("CIU") of the MDCR.[1] See Affidavit of Ronald Brandon II[2] ("Brandon Aff."), ¶¶ 1-2. During this investigation, the Director of the Civil Rights Department oversaw all decision-making with regards to investigatory functions including, but not limited to, how long an investigation could run, how many investigators could work on a particular case, the application of office resources to an investigation, whether an outcome was acceptable, and when a determination was complete and ready for

---

[1] The CIU is an administrative agency within the MDCR that enforces Minneapolis Civil Rights Ordinances by investigating and adjudicating complaints of discrimination; it also serves as a Fair Employment Practices Agency ("FEPA") under federal law, under which it investigates violations of Title VII of the 1964 Civil Rights Act pursuant to work share agreements with the Equal Employment Opportunity Commission ("EEOC"). See Brandon Aff., ¶ 2.

[2] Ronald Brandon II was the lead investigator at the MDCR at the time of Holmes's charge of discrimination. See Brandon Aff., ¶ 1.

release.  Id., ¶ 6; see also Affidavit of Michael K. Browne ("Browne Aff."), ¶ 4.[3]  The initial investigator assigned to Holmes's charge was Michael Johnson.  Id., ¶ 5.  Due to the high turn over at the MDCR, three other investigators also worked on Holmes's case.  Id., ¶ 5.  At all times prior to November 16, 2006, investigators kept in contact with Holmes via letters and the telephone using his Minnesota contact information.  Id., ¶ 10.  After November 16, 2006, Holmes informed MDCR staff that he had moved to Georgia.  Id.  During the investigation of Holmes' claims, at least six witnesses were interviewed by the MDCR, each investigator spent time talking with Holmes about his case, and Holmes had the opportunity to provide input and information regarding his allegations.  See Browne Aff., ¶ 6.

The investigation into Holmes's claims was completed by the MDCR in February 2006.  Browne Aff., ¶ 7.  On April 28, 2006, the MDCR issued its determination that there was no probable cause to conclude that AT&T had discriminated against Holmes.  See Def.'s Mem., Exhibit D (Determination) at p. 11.  On May 1, 2006, the Director of the MDCR sent a letter to Holmes, notifying him of the determination of no probable cause and his right to appeal the determination to the Executive Director of the MDCR.  See Def.'s Mem., Exhibit E (May 1, 2006 Letter from Khalifa to Holmes).  In addition, the letter provided:

> You may also bring a private lawsuit in Minnesota District Court regarding this matter.  This suit must be filed within 45 days of your receipt of this Determination.  Please review the enclosed **Notice of Rights to Private Action** for the requirements of such a suit.

---

[3]  From September 2005 through May 2006, Michael K. Browne served as a Deputy Director for MDCR, and from May of 2006 to June of 2007 served as the Interim Director of the MDCR.  See Browne Aff., ¶ 1.  He is presently serving as the Manager for the Legal Affairs Unit at the Minnesota Department of Human Rights.  Id.

3

Id. at p. 2 (emphasis in original).

Holmes appealed the no probable cause determination, and on October 5, 2006, the Minneapolis Commission on Civil Rights ("MCCR") upheld the Determination. See Def.'s Mem., Exhibit F (MCCR Order).

On November 22, 2008, Holmes filed the present suit in federal court. In his Complaint he alleged that the MDCR negligently handled his claim of discrimination. See Complaint at p. 1. In particular, Holmes claimed negligence on the part of the MDCR because (1) his claims were handled by five investigators over a three-and-a-half year period; (2) he was told by investigators that the statutes of limitations did not apply to his claims as long as it was being investigated by the MDCR; (3) the MDCR failed to interview important witnesses he identified; (3) the MDCR failed to obtain his personnel folder at AT&T, which would have provided proof that he was discharged for absences that were covered by the FMLA; (4) the MDCR failed to interview witnesses that would have corroborated his claim that he was removed from an AT&T committee and removed as an union representative in violation of the FMLA; (5) and the MDCR failed to interview the head of AT&T's corporate security along with management. Id. at pp.1-3.

Holmes also alleged that he was promised that his claim would be explored with diligence and professionalism and that the MDCR had him sign releases giving it the authority to do so. Complaint at p. 3. Holmes claimed that the MDCR's alleged failure to explore his claim with diligence and professionalism amounted to a breach of a written and oral contract and a violation of his civil rights. Id. at pp. 3-4. Hunter asserted that as a result of the MDCR's failure to handle his claim in a timely and

4

appropriate manner, he has suffered an extreme amount of pain, suffering and mental anguish. Id. at p. 4. Holmes also noted that this was the second time he had asserted his lawsuit; the first case had been dismissed in a Georgia court. Id.

In the Georgia case, Holmes brought claims against AT&T that included intentional infliction of emotional distress, defamation, and a violation of the Family Medical Leave Act ("FMLA"). See Holmes v. AT&T Corp., Civil Action No. 1:06-CV-2960-MHS (N.D. Ga. March 15, 2007), Docket No. 29-1 (March 15, 2007 Order, p. 1). In addition, the Georgia Complaint referred to "disability discrimination" and a "violation of civil rights" without any further explanation. Id. at p. 2. Federal District Judge Marvin H. Shoob dismissed Holmes's defamation claim against AT&T based on the doctrine of absolute privilege; dismissed Holmes's claims of intentional infliction of emotion distress and violation of the FMLA based on the applicable statute of limitations; and dismissed any claim for disability discrimination and violation of civil rights based on Holmes's failure to provide specific allegations that would establish any such claims. Id.

The present matter is now before the Court based on the MDCR's Motion for Summary Judgment.

## II. STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celeotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); see also Winthrop Res. Corp. v. Eaton Hydraulics, Inc., 361 F.3d 465, 468 (8th Cir. 2004) (finding that a court "must view the evidence and the inferences that

5

may be reasonably drawn from the evidence in the light most favorable to the non-moving party."). "[S]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex, 477 U.S. at 327. "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" DePugh v. Smith, 880 F. Supp. 651, 656 (N. D. Iowa 1995) (quoting Anderson, 477 U.S. at 248).

The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed. Celotex Corp., 477 U.S. at 322-23; see also Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party." Ohio Cas. Ins. Co. v. Union Pac. R.R., 469 F.3d 1158, 1162 (8th Cir. 2006). If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Anderson, 477 U.S. at 256; Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995). "The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial." Minnesota Laborers Health & Welfare Fund v. Swenke, 2003 U.S. Dist. LEXIS 11439, *4-5 (D. Minn. 2003) (citations omitted). The non-moving party "must substantiate his allegations with sufficient probative evidence that would permit a finding in [their] favor based on more than mere

speculation, conjecture, or fantasy." Wilson v. Int'l Bus. Mach. Corp., 62 F.3d 237, 241 (8th Cir. 1995).

## III.    ANALYSIS

### A.    Common Law Claim of Negligence

The MDCR asserts that it is entitled to vicarious common law official immunity on Holmes' claim of negligence[4] against it, as its employees' actions involved discretionary decisions and Holmes has not alleged, let alone provided any evidence showing that its employees acted in a willful or malicious manner. See Def.'s Mem. at pp. 6-8.

"Official immunity provides a public official with a defense to state law claims...." Mumm v. Mornson, 708 N.W.2d 475, 490 (Minn. 2006) (citations omitted). Specifically, "[o]fficial immunity 'prevents a public official charged by law with duties which call for the exercise of his judgment or discretion' from being held personally liable for damages, unless the official has committed a willful or malicious act." Id. (citing Elwood v. County of Rice, 423 N.W.2d 671, 677 (Minn. 1988), quoting Sulsa v. State, 247 N.W .2d 907, 912 (Minn. 1976)). Official immunity is a common law doctrine that "enables public employees to perform their duties effectively, without fear of personal liability that might inhibit the exercise of their independent judgment." Id. (citation omitted).

The analysis as to whether official immunity is applicable consists of two steps: first, "a court asks whether the conduct challenged by the plaintiff is discretionary or

---

[4]    The MCDR suggests that Holmes' Complaint has also asserted a claim for intentional inflection of emotional distress ("IIED"). Def. Mem. at p. 18. While it is true that the introductory paragraph of the Complaint states that Holmes was bringing a civil action for "NEGLIGENCE – BREACH OF WRITTEN CONTRACT – BREACH OF VERBAL CONTRACT – VIOLATION OF CIVIL RIGHTS – MENTAL ANGUISH – MENTAL ABUSE – EMOTIONAL DISTRESS", there is nothing in the Complaint or in Holmes' response to the MDCR's motion for summary judgment to indicate that Holmes had brought a separate claim for IIED.

7

ministerial"; and "[s]econd, if the conduct is discretionary, a court asks whether the officers' conduct was malicious or willful." Clark ex rel T.M.J. v. Pielert, NO. CIV. 07-3649 (DSD/JJG), 2009 WL 35337 at *9 (D. Minn. Jan. 05, 2009) (citing Bailey v. City of St. Paul, 678 N.W.2d 697, 701 (Minn. Ct. App. 2004)) (citation omitted).

Under the first step, a public official is generally not personally liable for damages arising out actions that require "the exercise of his judgment or discretion." Anderson v. Anoka Hennepin Indep. Sch. Dist. 11, 678 N.W.2d 651, 655 (Minn. 2004) (quotations omitted). On the other hand, official immunity does not protect public officials from liability arising from "the execution of ministerial, rather than discretionary, functions, that is, where 'independent action' is neither required nor desired." Id. A ministerial duty consists of "one that is 'absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts.'" Id. at 656 (citing Wiederholt v. City of Minneapolis, 581 N.W.2d 312, 315 (Minn. 1998), quoting Cook v. Trovatten, 200 Minn. 221, 224, 274 N.W. 165, 167 (1937)). "In contrast, a duty is discretionary if it involves 'more individual professional judgment that necessarily reflects the professional goal and factors of a situation.'" Mumm, 708 N.W.2d at 490-91 (quoting Wiederholt, 581 N.W.2d at 315).

Here, the Minneapolis Ordinances bearing on this Court's analysis provide in relevant part:

> (c) Preliminary inquiry into complaint. Promptly upon the filing of any complaint, the director shall make such investigation as the director <u>may deem appropriate</u> to determine whether there is probable cause to believe that the allegations of discrimination are well founded. While the director is investigating a complaint, the director may attempt to conciliate the matter complained of prior to the signing of a verified complaint or prior to making a determination of

probable cause. Where the complaint alleges an unfair discriminatory act under section 139.40(e), the director of the department of inspections shall be notified of the pendency of the complaint and of its subsequent resolution.

(d) Probable cause. After investigating a complaint and after consulting with the city attorney's office, the director shall make a determination as to whether there is probable cause to believe that the allegations of discrimination are well founded.

(e) Finding of no probable cause and review thereof. If the director makes a determination of no probable cause, the director shall notify by mail the complainant and respondent of such a determination and of the complainant's right to appeal the determination to a review committee. The complainant may within fifteen (15) days after receiving such notice file an appeal in writing with the director, who shall promptly transmit said appeal to the chairperson of the commission. The chairperson shall designate three (3) members of the commission, at least one of whom shall be a lawyer, to review the director's determination. Upon request the complainant shall be able to make a presentation to the review committee. The review committee may then either affirm or reverse the director's decision or send the complaint back to the director for additional investigation. No member of a review committee shall act as a member of a hearing committee in the same case.

City of Minneapolis Ordinances, Ch. 114, § 141.50 (emphasis added).

While § 141.50 directs that "[p]romptly upon the filing of any complaint, the director shall make such investigation as the director may deem appropriate to determine whether there is probable cause to believe that the allegations of discrimination are well founded," there is no mention in the ordinance as to how long an investigation may take or even a deadline by which a decision must be made. Instead, the language of the ordinance is discretionary, allowing the director to make a judgment call as what type of investigation is necessary to make the required probable cause determination, including how long an investigation may run. Additionally, the

uncontradicted facts before this Court establish that the application of office resources to an investigation, whether an outcome is acceptable and when a determination is complete and ready for release, is determined by the MDCR. See Brandon Aff., ¶ 6. Therefore, the MDCR officers are protected from suit as to Holmes's claim for negligence, absent a showing of willfulness or malice.

"For purposes of official immunity, willful and malicious are synonymous and are defined as 'the intentional doing of a wrongful act without legal justification or excuse.'" Undlin v. City of Minneapolis, NO. CIV. 08-1855 (JNE/FLN), 2009 WL 3754208 at *7 (D. Minn. Nov. 04, 2009) (quoting Rico v. State, 472 N.W.2d 100, 107 (Minn. 1991)); see also Samuelson v. City of New Ulm, 455 F.3d 871, 878 (8th Cir. 2006) ("Malice is 'the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right.'") (quoting Carnes v. St. Paul Union Stockyards Co., 164 Minn. 457, 205 N.W. 630, 631 (Minn. 1925)); Shqeirat v. U.S. Airways Group, Inc., 645 F. Supp.2d 765, 788 (D. Minn. 2009) ("The 'willful or malicious wrong' exception to official immunity 'anticipates liability only when an official intentionally commits an act that he or she has reason to believe is prohibited.'") (quoting Johnson v. County of Dakota, 510 N.W.2d 237, 240-41 (Minn. Ct. App. 1994), quoting Rico, 472 N.W.2d at 107); Clark ex rel T.M.J. v. Pielert, NO. CIV. 07-3649 (DSD/JJG), 2009 WL 35337 at *9 (D. Minn. Jan. 05, 2009) ("A public official commits willful or malicious conduct if he intentionally commits an act that he has reason to believe is prohibited.") (citation omitted).

In order to prove willful or malicious conduct, a plaintiff cannot rest on bare allegations, and must instead present evidence establishing that the city officials

intentionally committed an act that he or she had reason to believe is prohibited. See Undlin, 2009 WL 3754208 at *7 (citing Reuter v. City of New Hope, 449 N.W.2d 745, 751 (Minn. Ct. App. 1990); see also Clark ex rel T.M.J., 2009 WL 35337 at *9. Further, malice is not established where there is only evidence that an official intentionally acted in a manner that is later determined to be unlawful; rather, the official must have had reason to know his act was prohibited. See Greiner v. City of Champlin, 27 F.3d 1346, 1355 (8th Cir. 1994) (citing Rico, 472 N.W.2d at 106-07).

Holmes has failed to allege or provide any evidence that MDCR employee intentionally committed an act that they had reason to believe was prohibited. In fact, Holmes' Complaint does not allege that anyone in the MDCR intentionally acted in a deliberate manner regarding his claim in order to deprive him of some right, but instead asserted that the MDCR acted in a negligent and "haphazardly" manner. See Complaint at p. 1. As such, this Court finds that the MDCR employees are protected from suit as to Holmes' claim for negligence under the doctrine of official immunity. Further, given that the MDCR employees are protected from suit on these claims, vicarious official immunity protects the MDCR from suit based on the immunity of its employees. See Wiederholt, 581 N.W.2d at 316 ("When applicable, vicarious official immunity protects the government entity from suit based on the official immunity of its employee."). For these reasons, the Court recommends granting MDCR's motion for summary judgment on Holmes's claim for negligence.[5]

---

[5] Holmes asserted that as a result of the MDCR's failure to handle his claim in a timely and appropriate manner, he was precluded from asserting claims against AT&T in his Georgia action due to the expiration of the applicable statute of limitations. This contention is meritless. First, Holmes never raised a FMLA claim to the MDCR. See Def.'s Mem., Exhibit A (Plaintiffs' Amended Charge of Discrimination); Ex. D

B.  **Breach of Contract**

As to Holmes' breach of contract claim, it was MDCR's contention that even if Holmes could establish the elements of a contract claim, which he cannot, it did not have the authority to enter into a contract with Holmes.[6] See Def.'s Mem. at p. 16. This Court agrees. "Under Minnesota law, a municipality may enter into a contract only pursuant to authority from the city council." Plymouth Foam Products, Inc. v. City of Becker, Minn., 944 F. Supp. 781, 784 (D. Minn. 1996) (citing Minn. Stat. § 412.201).[7] In

---

(Determination). Second, Holmes signed the Statement of Authority from the MDCR, acknowledging that his claim to the MDCR did not stop the statute of limitations on any private claim. See Def.'s Mem., Exhibit B (Statement of Authority). Therefore, Holmes was on notice by the MDCR that his private claims were not tolled while his charge was proceeding through the MDCR's determination process. In addition, the MDCR apprised Holmes in its no probable cause determination that he had the right to bring a private action against AT&T in a Minnesota District Court within 45 days from the receipt of the no probable cause determination. Id., Ex. E (May 1, 2006 Determination of No Probable cause); see also November 3, 2009 Letter from counsel for MDCR attaching Holmes' May 15, 2006 Appeal of the MDCR's no probable cause determination (evidencing that Holmes received the no probable cause determination). As such, even if MDCR officials told Holmes that his charge to the MDCR stopped the statute of limitations for a private cause of action (of which Holmes provided no competent evidence to support), he did have a remedy to seek a private cause of action against AT&T in a Minnesota State Court after the MDCR's determination. In any event, Holmes chose not to file a private cause of action in a Minnesota District Court, and instead filed a suit in a Georgia federal court. In other words, it was his own actions, or lack thereof, that precluded him from asserting certain claims due to the statute of limitations.

[6]  This Court notes that at least one court has found that the doctrine of official immunity applies to contract claims. See Rico, 472 N.W.2d at 106-07 (official immunity applied in a breach of employment contract action to protect the Commissioner of Veterans Affairs' decision to terminate an unclassified policy-making official who could be discharged at any time without reason). However, since the MDCR limited its official immunity argument to the state tort claims, this Court will not address the applicability of the doctrine of official immunity to Holmes' contract claim.

[7]  Minn. Stat. § 412.201 provides:

> Every contract, conveyance, license, or other written instrument shall be executed on behalf of the city by the

this case, there is no evidence that the Minneapolis City Council granted either the MDCR or any official within that department the actual authority to enter into contracts on behalf of the City. Even if Holmes believed that officials at the MDCR had the authority, for whatever reason, to enter into a contract with him on behalf of the Minneapolis City Council, he was required to ascertain whether the [city council] passed a resolution authorizing the [alleged agreement], or act at his peril.'" Id. (quoting Morris v. Perpich, 421 N.W.2d 333, 336 (Minn. Ct. App. 1988), rev. denied (May 16, 1988)). The lack of any evidence that the Minneapolis City Council authorized a contract with Holmes is fatal. Therefore, defendant's motion for summary judgment as it relates to Holmes's breach of contract claim should be granted and the claim be dismissed with prejudice.

## C. Civil Rights Claim

Holmes claimed in his Complaint that the MDCR's alleged failure to explore his claim with diligence and professionalism amounted to a violation of his civil rights. Id. at pp. 1, 3-4. Assuming that indeed Holmes was pursuing a civil rights claim against the MDCR, which is not at all clear from the body of his Complaint, the MDCR argued that this claim fails to comply with the pleading requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure. See Def.'s Mem. at pp. 22-23. The MDCR is correct. Holmes failed to provide in his Complaint or his opposition memorandum which federal statutory or constitutional right the MDCR violated, let alone provide any facts or evidence to

---

> mayor and clerk, with the corporate seal affixed, <u>and only pursuant to authority from the council</u>.

(emphasis added).

support a civil rights claim.[8] As such, the MDCRs motion for summary judgment as it relates to Holmes civil rights claim should be granted and the claim be dismissed without prejudice. See generally, Sufka v. Minnesota, NO. CIV 07-2528 (RHK/SRN), 2007 WL 4072313 at *2 (D. Minn. Nov. 15, 2007) ("In this case, Plaintiff's complaint fails to state an actionable civil rights claim because it does not identify any violation of Plaintiff's rights under the federal Constitution. In fact, the complaint does not mention, or even allude to, the Constitution.").

## RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.  Defendant's Motion for Summary Judgment [Docket No. 16] be **GRANTED**.

2.  Plaintiff's Complaint be **DISMISSED** with prejudice as to all claims except for his civil rights claim, which should be **DISMISSED** without prejudice.

Dated: January 4, 2010

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

---

[8] The only statutory reference to Holmes' civil rights claim was in the Civil Cover Sheet filed by him with the Complaint [Docket No. 1-2] in which he stated that he was filing his suit under "Civil Rights Act of 1991 - P.L.102-166." The Civil Rights Act of 1991 was enacted by Congress to "amend the Civil Rights Act of 1964 to strengthen and improve Federal civil rights laws, to provide for damages in cases of intentional employment discrimination, to clarify provisions regarding disparate impact actions, and for other purposes." Civil Rights Act of 1991 - P.L.102-166, Introductory Paragraph. In a nutshell, it amended and added to various statutes bearing on discrimination.

## **NOTICE**

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 21, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **January 21, 2010**.